## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KESHAUN DAMIEN ALLEN,

     Plaintiff,

v.                          CASE NO.:

GARDAWORLD,

     Defendant,

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KESHAUN DAMIEN ALLEN, (hereinafter "Plaintiff" or "Mr. Allen"), by and through the undersigned counsel, hereby sues Defendant, GARDAWORLD (hereinafter "Defendant," "Garda," or "Company") and alleges:

## INTRODUCTION

1.    The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on disability and retaliation in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., the Florida Civil

Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA"), and Florida Workers' Compensation Retaliation statutes, § 440.205, Fla. Stat.

2.     As further set forth below, Plaintiff alleges that Defendant unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his disability, retaliated against him for requesting reasonable accommodation for his disability, and retaliated against him for filing a workers' compensation claim, all in violation of his rights under the ADA, the FCRA, and Florida workers' compensation laws.

3.     As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pinellas County, Florida.

## **PARTIES**

8.     Plaintiff is KESHAUN DAMIEN ALLEN, a 22-year-old male who sustained a work-related injury on June 18, 2024, while employed by Defendant, resulting in extensive medical conditions including headache, cervicalgia, thoracic spine pain, low back pain, multiple radiculopathy conditions, muscle contractures, spasms, and myalgia. As a result of his

work-related injury, Plaintiff has ongoing medical restrictions including no prolonged sitting or standing over 1 hour at a time and no lifting/twisting with objects over 20 pounds.

9.    Plaintiff is a member of a class protected against discrimination and retaliation based on his disability under the ADA and the FCRA.

10.    At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

11.    At all times material herein, Plaintiff was an employee entitled to protection as defined by the ADA and the FCRA.

12.    The Defendant, GARDAWORLD, is a corporation with a principal place of business located at 12025 34th St N, St. Petersburg, FL 33716, Pinellas County, Florida.

13.    At all times material herein, Defendant regularly conducted, and continues to conduct business throughout Pinellas County, Florida, providing armed security guard services.

14.    At all times material herein, Defendant employed more than fifty (50) employees and met, and continues to meet, the definitions of "employer"

under all applicable federal and state statutes including but not limited to the ADA and the FCRA.

15.    Accordingly, Defendant is liable under the ADA and the FCRA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

16.    Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

17.    On December 3, 2024, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, disability discrimination and retaliation.

18.    On July 10, 2025, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 511-2025-00845) against Defendant.

19.    More than one hundred eighty (180) days have elapsed since the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore,

Plaintiff is entitled to bring his FCRA claims in the instant civil action against Defendant and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

20.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.    On September 13, 2023, Plaintiff began working for Defendant as an Armed Security Guard/Driver/Messenger at an hourly wage of $18.00 per hour. Plaintiff's duties included providing armed security services and operating company vehicles as part of his regular job responsibilities.

22.    Plaintiff reported directly to Branch Manager Bo Ojdanic, who supervised Plaintiff's work activities and schedule throughout his employment with Defendant.

23.    On June 18, 2024, while working in the course and scope of his employment with Defendant, Plaintiff sustained a work-related injury in a motor vehicle accident. Specifically, on June 22, 2024, at approximately 10:26 AM, Plaintiff was a passenger in a 2021 Ford Transit van owned by Defendant at the intersection of N Manhattan Ave and W Boy Scout Blvd in Tampa, Florida.

24.    As a result of the work-related motor vehicle accident, Plaintiff sustained significant injuries and was transported to St. Joseph's Hospital for medical treatment. The accident was documented in Police Report Number 2024-363954 and HSMV Crash Report Number 26616128.

25.    Following his work-related injury, Plaintiff began receiving medical treatment at Tampa Auto Injury Center under the care of Dr. George Panagopoulos, D.C., and later under the care of Dr. James Zaccari. Plaintiff's extensive medical conditions resulting from the work-related injury include headache, cervicalgia, thoracic spine pain, low back pain, multiple radiculopathy conditions, muscle contractures, spasms, and myalgia.

26.    Due to his work-related injuries and resulting medical conditions, Plaintiff was placed under medical restrictions by his treating physicians. On June 29, 2024, Plaintiff's initial work restrictions included no lifting greater than 15 pounds, no bending at the waist, no prolonged standing, and no pushing/pulling greater than 15 pounds, with these restrictions to remain in effect through July 20, 2024.

27.    On July 17, 2024, Plaintiff's work restrictions were updated to include no lifting greater than 15 pounds, no bending at the waist, and no sitting/standing for prolonged duration, to patient tolerance.

28.     Throughout his medical treatment and recovery process, Plaintiff diligently followed his physicians' treatment recommendations and took prescribed medication, including Acetaminophen 500mg for back pain management.

29.     On August 31, 2024, Plaintiff received medical clearance to return to work with ongoing restrictions, specifically no prolonged sitting or standing over 1 hour at a time and no lifting/twisting with objects over 20 pounds. Plaintiff's treating physician provided appropriate documentation of these work restrictions.

30.     On September 6, 2024, Plaintiff attempted to return to work and presented his medical clearance and work restrictions to Defendant. However, Defendant refused to accommodate Plaintiff's medical restrictions and demanded that Plaintiff obtain a "full duty" medical release without any accommodations.

31.     Defendant failed to engage in any interactive process with Plaintiff regarding reasonable accommodations for his documented medical restrictions, despite Plaintiff's willingness and ability to perform the essential functions of his job with reasonable accommodations.

32.     During the time Plaintiff attempted to return to work, his direct supervisor Bo Ojdanic was out of the office, creating additional barriers to Plaintiff's return to work and accommodation process.

33.     On September 11, 2024, Defendant falsely claimed that Plaintiff's driver's license was suspended and placed Plaintiff on unpaid suspension based on this false information. On September 12, 2024, Defendant issued a "Job Qualification Notice" to Plaintiff stating that his driver's license was suspended.

34.     On September 16, 2024, Plaintiff provided proof from the Florida Department of Highway Safety and Motor Vehicles confirming that his driver's license (license number A450-504-02-166-0) was valid and had never been suspended.

35.     Despite Plaintiff's provision of official documentation proving his driver's license was valid, on September 18, 2024, Defendant continued to maintain its false claim about Plaintiff's license status. On September 19, 2024, Plaintiff again confirmed that his license was "VALID and active and was NEVER SUSPENDED."

36.    Defendant gave Plaintiff until October 12, 2024, to resolve the fabricated license issue, despite Plaintiff having already provided conclusive proof that his license was valid and had never been suspended.

37.    Throughout his employment with Defendant, Plaintiff was subjected to a hostile work environment characterized by daily verbal abuse by branch manager Bo Ojdanic, who made derogatory statements towards employees and denied meal breaks and rest periods.

38.    Defendant's head office was aware of the hostile work environment and discriminatory treatment through constant email communications but failed to take corrective action.

39.    Prior to his work-related injury, Plaintiff had submitted a two-week notice of resignation due to personal reasons. However, after his personal situation was resolved, Plaintiff attempted to withdraw his resignation and return to work, particularly given his need for employment and medical benefits following his work-related injury.

40.    Despite Plaintiff's attempts to return to work with proper medical documentation, valid driver's license, and willingness to perform his job duties with reasonable accommodations, Defendant refused to

schedule Plaintiff for work and continued to deny him the opportunity to return to his position.

41.    On October 14, 2024, Defendant terminated Plaintiff's employment through a termination letter signed by Bo Ojdanic, falsely claiming "job abandonment" as the reason for termination, despite Plaintiff's active and ongoing attempts to return to work and resolve all issues raised by Defendant.

42.    Defendant's claim of "job abandonment" was pretextual and false, as Plaintiff had continuously attempted to return to work, provided all requested documentation, and sought to resolve any concerns raised by Defendant regarding his ability to perform his job duties.

43.    As a direct result of Defendant's discrimination and retaliation, Plaintiff lost his employment, wages, benefits, and has suffered significant economic harm. Plaintiff has been unable to secure alternative employment due to waiting on employment status resolution from Defendant.

44.    Plaintiff has not received unemployment benefits or disability benefits and continues to suffer financial hardship as a result of Defendant's unlawful actions.

45.    Plaintiff has suffered and continues to suffer emotional distress, mental anguish, embarrassment, humiliation, and loss of professional and personal reputation as a result of Defendant's discriminatory and retaliatory conduct.

46.    Plaintiff was forced to retain legal counsel and has incurred attorney's fees and costs in connection with his workers' compensation claim and this action.

## COUNT I
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**Discrimination Based on Disability**
**42 U.S.C. §§ 12101-12213**

47.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.    Plaintiff is a 22-year-old male who sustained a work-related injury on June 18, 2024, resulting in extensive medical conditions including headache, cervicalgia, thoracic spine pain, low back pain, multiple radiculopathy conditions, muscle contractures, spasms, and myalgia, with ongoing medical restrictions including no prolonged sitting or standing over 1 hour at a time and no lifting/twisting with objects over 20 pounds.

49.    At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

50.    At all times material herein, Defendant employed, and continues to employ, fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. As such, at all times material herein, Defendant was and is an "employer" within the meaning of the ADA. 42 U.S.C. § 12101 et seq.

51.    Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

52.    At all times material herein, Defendant employed Plaintiff as an Armed Security Guard/Driver/Messenger.

53.    Plaintiff's work-related injuries and resulting medical conditions constitute a "disability" within the meaning of the ADA, as they substantially limit one or more major life activities, including but not limited to walking, standing, sitting, lifting, and working.

54.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

55.    Defendant was also obligated to engage in the interactive process with Plaintiff to determine what, if any, reasonable accommodations could be made to enable Plaintiff to perform the essential functions of his job.

56.    However, Plaintiff was subjected to discriminatory treatment at the hands of his supervisors, particularly Branch Manager Bo Ojdanic, because of his disability and need for reasonable accommodations.

57.    When Plaintiff attempted to return to work on September 6, 2024, with proper medical documentation showing he was cleared to return to work with restrictions, Defendant refused to accommodate his documented medical restrictions and demanded that he obtain a "full duty" medical release without any accommodations.

58.    Defendant failed to engage in any interactive process with Plaintiff regarding reasonable accommodations for his documented medical restrictions, despite Plaintiff's willingness and ability to perform the essential functions of his job with reasonable accommodations.

59.    Defendant's refusal to provide reasonable accommodations for Plaintiff's disability-related limitations constituted discrimination based on disability in violation of the ADA.

60.    Plaintiff believed that Defendant's discriminatory acts materially altered the terms and conditions of his employment. Further, a reasonable person would have found that the discriminatory acts of Defendant materially altered the terms and conditions of Plaintiff's employment.

61.    Plaintiff did not welcome the discriminatory acts and did not directly or indirectly invite or solicit them by his own acts or statements.

62.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, about the discrimination against Plaintiff, but did not take prompt remedial action.

63.    Defendant violated the ADA by subjecting Plaintiff to discrimination because of his disability by refusing to provide reasonable accommodations, refusing to engage in the interactive process, and ultimately terminating his employment under the false pretense of "job abandonment."

64.    Further, Defendant failed to prevent and promptly correct workplace discrimination. Defendant's supervisors, managers, and Human Resources personnel who learned about Plaintiff's disability and need for accommodations failed to promptly take steps to accommodate Plaintiff or engage in the required interactive process.

65.     The conduct of Defendant, by and through its employees, supervisors, managers, and agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the ADA.

66.     Defendant's actions constitute discrimination in violation of the ADA.

67.     As a direct, proximate and foreseeable result of Defendant's aforementioned actions, inactions, and violations of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; and (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, emotional distress, humiliation, loss of dignity, loss of the capacity for the enjoyment of life, irreparable damages to his family and relationships, and other nonpecuniary losses and intangible injuries.

**WHEREFORE**, the Plaintiff, KESHAUN DAMIEN ALLEN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GARDAWORLD, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.     Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA, 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations, discriminating against Plaintiff based on his disability;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the discrimination to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.     Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA;

D.     Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under

the ADA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest calculated at the
prevailing rate, as provided by law;

F.      Award Plaintiff his attorneys' fees, reasonable expert witness
fees, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem
equitable, just, and proper.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation
### 42 U.S.C. §§ 12101-12213

68.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

69.     Plaintiff is a 22-year-old male who sustained a work-related injury on June 18, 2024, resulting in extensive medical conditions that constitute a disability within the meaning of the ADA.

70.     At all times material herein, Defendant employed Plaintiff and Defendant was an "employer" within the meaning of the ADA.

71.    Moreover, Defendant is a "person" within the meaning of the ADA, 42 U.S.C. § 12101 et seq.

72.    At all times material herein, Defendant employed Plaintiff as an Armed Security Guard/Driver/Messenger.

73.    Plaintiff engaged in protected activity under the ADA by requesting reasonable accommodations for his disability-related limitations and by seeking to return to work with documented medical restrictions.

74.    Defendant subjected Plaintiff to adverse employment actions for engaging in protected activity by refusing to accommodate his disability, placing him on unpaid suspension based on false claims about his driver's license, and ultimately terminating his employment under the false pretense of "job abandonment."

75.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

76.    As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

77.    Defendant violated the ADA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it.

78.    Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

79.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the ADA.

80.    Defendant's retaliatory actions included but were not limited to: (a) refusing to engage in the interactive process regarding reasonable accommodations; (b) demanding a "full duty" release despite Plaintiff's documented medical restrictions; (c) falsely claiming Plaintiff's driver's license was suspended and placing him on unpaid suspension; (d) continuing to maintain false claims about Plaintiff's license status despite proof of its validity; (e) refusing to schedule Plaintiff for work despite his

valid license and medical clearance; and (f) terminating Plaintiff's employment under the false pretense of "job abandonment."

81. As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the ADA, according to proof.

**WHEREFORE**, the Plaintiff, KESHAUN DAMIEN ALLEN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GARDAWORLD, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the ADA, 42 U.S.C. § 12101 et seq., as amended, and its implementing Regulations by retaliating against Plaintiff for engaging in protected activity;

B.     Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C.     Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of his injuries and damages caused by Defendant's retaliatory conduct and actions pursuant to the ADA;

D.     Award Plaintiff all other damages available under the ADA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof;

E.     Award Plaintiff pre- and post-judgment interest calculated at the prevailing rate, as provided by law;

F.    Award Plaintiff his attorneys' fees, reasonable expert witness fees, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT III
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### Discrimination Based on Disability
### Florida Statutes §§ 760.01-11

82.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

83.    Plaintiff is a 22-year-old male who sustained a work-related injury on June 18, 2024, resulting in extensive medical conditions including headache, cervicalgia, thoracic spine pain, low back pain, multiple radiculopathy conditions, muscle contractures, spasms, and myalgia, with ongoing medical restrictions including no prolonged sitting or standing over 1 hour at a time and no lifting/twisting with objects over 20 pounds.

84.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

85.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes, in that the definition includes "an individual, association, corporation, joint apprenticeship committee, joint-stock company, labor union, legal representative, mutual company, partnership, receiver, trust, trustee in bankruptcy, or unincorporated organization; any other legal or commercial entity; the state; or any governmental entity or agency." § 760.02(6), Florida Statutes.

86.    At all times material herein, Defendant was and is an "employer" within the meaning of the FCRA. § 760.02(7), Florida Statutes.

87.    Plaintiff's work-related injuries and resulting medical conditions constitute a "handicap" within the meaning of the FCRA, as they substantially limit one or more major life activities, including but not limited to walking, standing, sitting, lifting, and working.

88.    Defendant, as Plaintiff's employer, was obligated to guard against the discrimination of Plaintiff by his co-workers, supervisors, managers, and other persons and to protect Plaintiff from discrimination in the workplace.

89.    However, Plaintiff was subjected to discrimination because of his disability through discriminatory treatment by Defendant and its

employees, supervisors, managers, and other agents, who refused to provide reasonable accommodations and terminated Plaintiff because of his disability-related limitations.

90.    When Plaintiff attempted to return to work on September 6, 2024, with proper medical documentation showing he was cleared to return to work with restrictions, Defendant refused to accommodate his documented medical restrictions and demanded that he obtain a "full duty" medical release without any accommodations.

91.    Defendant failed to engage in any interactive process with Plaintiff regarding reasonable accommodations for his documented medical restrictions, despite Plaintiff's willingness and ability to perform the essential functions of his job with reasonable accommodations.

92.    Plaintiff believed that Defendant's discriminatory behavior materially altered the terms and conditions of his employment. Further, a reasonable person would have found that Defendant's offensive acts and statements materially altered the terms and conditions of Plaintiff's employment.

93.    Plaintiff did not welcome the offensive statements, acts, and discriminatory treatment and did not directly or indirectly invite or solicit them by his own acts or statements.

94.    At all times material herein, Defendant knew, or in the exercise of reasonable care should have known, the discrimination suffered by Plaintiff, but did not take prompt remedial action to eliminate the discriminatory behavior.

95.    Defendant violated the FCRA by subjecting Plaintiff to discrimination because of his disability by refusing to provide reasonable accommodations, refusing to engage in the interactive process, and ultimately terminating his employment under the false pretense of "job abandonment."

96.    Plaintiff, by being subjected to this discrimination created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

97.    The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative

and remedial action to prevent the discrimination of Plaintiff, deprived him of statutory rights under the FCRA.

98.    As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, KESHAUN DAMIEN ALLEN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GARDAWORLD, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.    Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by discriminating against Plaintiff based on his disability;

B.    Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of Defendant's

discrimination against him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination he has endured;

C.      Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature, extent, and duration of the injuries and damages caused by Defendant's discriminatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## <u>COUNT IV</u>
## VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### Retaliation
### Florida Statutes §§ 760.01-11

99.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

100.    Plaintiff is a 22-year-old male who sustained a work-related injury on June 18, 2024, resulting in extensive medical conditions that constitute a disability within the meaning of the FCRA.

101.    At all times material herein, Defendant employed Plaintiff and Defendant was and is an "employer" within the meaning of the FCRA.

102.    Defendant is a "person" within the meaning of the FCRA, § 760.02(6), Florida Statutes.

103.    At all times material herein, Defendant employed Plaintiff as an Armed Security Guard/Driver/Messenger.

104.    Plaintiff engaged in protected activity under the FCRA by requesting reasonable accommodations for his disability-related limitations and by seeking to return to work with documented medical restrictions.

105.    Defendant subjected Plaintiff to adverse employment actions for engaging in protected activity by refusing to accommodate his disability, placing him on unpaid suspension based on false claims about his driver's license, and ultimately terminating his employment under the false pretense of "job abandonment."

106.    The actions and inaction of Defendant, by and through the conduct of its employees, supervisors, managers, and agents, as more particularly described hereinabove, constitute unlawful retaliation.

107.    As his employer, Defendant was obligated to guard against the retaliation of Plaintiff by his co-workers, supervisors, managers, and other agents of Defendant and to protect Plaintiff from retaliation in the workplace.

108.    Defendant violated the FCRA by, among other things, failing to promptly correct the retaliatory conduct toward Plaintiff once it learned of it.

109.    Plaintiff, by being subjected to this retaliation created by Defendant, was unreasonably and negatively affected in the terms, conditions, or privileges of his employment with Defendant.

110.   The conduct of Defendant, by and through its employees, supervisors, managers, and other agents, and Defendant's failure to exercise reasonable care to prevent and/or to take prompt and effective investigative and remedial action to prevent the retaliation of Plaintiff, deprived him of statutory rights under the FCRA.

111.   Defendant's retaliatory actions included but were not limited to: (a) refusing to engage in the interactive process regarding reasonable accommodations; (b) demanding a "full duty" release despite Plaintiff's documented medical restrictions; (c) falsely claiming Plaintiff's driver's license was suspended and placing him on unpaid suspension; (d) continuing to maintain false claims about Plaintiff's license status despite proof of its validity; (e) refusing to schedule Plaintiff for work despite his valid license and medical clearance; and (f) terminating Plaintiff's employment under the false pretense of "job abandonment."

112.   As a direct, proximate, and foreseeable result of Defendant's aforementioned actions and omissions, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the

capacity for the enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused and allowable under the FCRA, according to proof.

**WHEREFORE**, the Plaintiff, KESHAUN DAMIEN ALLEN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GARDAWORLD, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare that Defendant has violated the FCRA by retaliating against Plaintiff for engaging in protected activity;

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate nondiscriminatory measures to overcome the effects of the retaliation he has endured;

C. Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature,

extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions, pursuant to and within the statutory limitations of the FCRA;

D.      Award Plaintiff all other damages available under the FCRA, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof;

E.      Award Plaintiff pre- and post-judgment interest;

F.      Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.      Grant such other and further relief as this Court may deem equitable, just, and proper.

## COUNT V
## VIOLATION OF FLORIDA WORKERS' COMPENSATION RETALIATION STATUTE
### Florida Statutes § 440.205

113.    Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

114.   Plaintiff is a 22-year-old male who sustained a work-related injury on June 18, 2024, while employed by Defendant in the course and scope of his employment.

115.   At all times material herein, Defendant was an "employer" within the meaning of Florida Statutes § 440.205.

116.   Florida Statutes § 440.205 prohibits an employer from discharging, threatening to discharge, intimidating, or coercing any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law.

117.   Following his work-related injury on June 18, 2024, Plaintiff filed a workers' compensation claim against Defendant for his injuries sustained in the motor vehicle accident while operating a company vehicle.

118.   Plaintiff's filing of a workers' compensation claim constitutes protected activity under Florida Statutes § 440.205.

119.   Defendant was aware of Plaintiff's workers' compensation claim and his need for medical treatment and accommodations related to his work-related injury.

120.   Defendant retaliated against Plaintiff for filing his workers' compensation claim by: (a) refusing to accommodate his medical restrictions

upon his attempted return to work; (b) demanding a "full duty" release despite his documented medical limitations; (c) falsely claiming his driver's license was suspended and placing him on unpaid suspension; (d) refusing to schedule him for work despite his valid license and medical clearance; and (e) terminating his employment under the false pretense of "job abandonment."

121.    Defendant's adverse employment actions were motivated, at least in part, by Plaintiff's filing of a workers' compensation claim and his resulting medical restrictions and need for accommodations.

122.    There is a causal connection between Plaintiff's protected activity of filing a workers' compensation claim and Defendant's adverse employment actions, including his termination.

123.    Defendant's actions constitute retaliation in violation of Florida Statutes § 440.205.

124.    As a direct, proximate, and foreseeable result of Defendant's retaliatory conduct, Plaintiff has suffered, continues to suffer, and will suffer the following: (a) lost wages and benefits, past and future; (b) lost earning capacity; (c) noneconomic damages, including, but not limited to, pain and suffering, mental anguish, loss of dignity, loss of the capacity for the

enjoyment of life, and irreparable damages to his family and relationships; and (d) other economic losses proximately caused by Defendant's retaliatory conduct, according to proof.

**WHEREFORE,** the Plaintiff, KESHAUN DAMIEN ALLEN, requests trial by jury of all issues so triable as of right, demands judgment against the Defendant, GARDAWORLD, and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A.   Grant judgment in favor of Plaintiff and declare that Defendant has violated Florida Statutes § 440.205 by retaliating against Plaintiff for filing a workers' compensation claim;

B.   Award sufficient remedial relief to make Plaintiff whole for the individual loss that he has suffered because of the retaliation to which Defendant subjected him, including, but not limited to, front pay in lieu of reinstatement, full backpay with interest, pension and related benefits, and any other appropriate measures to overcome the effects of the retaliation he has endured;

C.   Award compensatory damages to Plaintiff in a sum that will properly and completely compensate Plaintiff for the nature,

extent, and duration of the injuries and damages caused by Defendant's retaliatory conduct and actions;

D.    Award Plaintiff all other damages available under Florida Statutes § 440.205, including, but not limited to, the damages set forth above and other economic losses proximately caused and allowable under the statute, according to proof;

E.    Award Plaintiff pre- and post-judgment interest;

F.    Award Plaintiff his attorneys' fees, including litigation expenses, and the costs of this action; and

G.    Grant such other and further relief as this Court may deem equitable, just, and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 12th day of July 2025.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709

Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com